UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| KERRY STINNETT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 3:12-cv-00114 |
| ) | Judge Aleta A. Trauger |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

# MEMORANDUM

The government has filed a Motion to Dismiss (Docket No. 5), with respect to which the plaintiff filed a Response in opposition (Docket No. 11), the government filed a Reply (Docket No. 15), the plaintiffs filed a Sur-Reply (Docket No. 22), and the government filed a Sur-Sur-Reply (Docket No. 25). For the reasons set forth herein, the Motion to Dismiss will be granted and Stinnett's case will be dismissed without prejudice.

# BACKGROUND[1]

Plaintiff Kerry Stinnett, a Tennessee resident, is a Vietnam veteran who underwent a colonoscopy at the United States Department of Veterans Affairs ("VA") Alvin C. York

---

[1] Unless otherwise noted, all facts are drawn from the Amended Complaint (Docket No. 20). After the defendants filed the instant Motion to Dismiss, the plaintiffs filed a Motion for Leave to file the Amended Complaint (Docket No. 12), which the court granted as unopposed (Docket No. 19). The court presumed that the pending Motion to Dismiss applied equally to the Amended Complaint (*id.*), which the government confirmed (Docket No. 21). The court notes that the plaintiff's Amended Complaint failed to attach the exhibits referenced therein. However, because those exhibit references correspond to the exhibits attached to the original Complaint, the court will treat those exhibits as incorporated by reference into the Amended Complaint.

1

Tennessee Valley Healthcare System Hospital in Murfreesboro, Tennessee ("York VA Hospital"), on April 14, 2003. During the colonoscopy procedure, unspecified York VA Hospital staff members utilized "flexible sigmoidoscopy [colonoscopy] equipment and tubing to complete the exam procedure as ordered." (Am. Compl. ¶ 7.) Stinnett alleges that this equipment had previously been utilized on other veterans, whose bodily wastes and fluids had come into contact with the equipment. He alleges that "the VA Hospital" failed to maintain sanitary equipment – *i.e.*, that its staff members did not sanitize the equipment after it was used on other patients – and that, as a result of this failure, he was exposed to several forms of the hepatitis virus.[2] Due to this exposure, Stinnett allegedly contracted hepatitis and suffered a host of serious medical and psychological conditions from the disease and his (apparently unsuccessful) efforts to treat it.

Stinnett alleges that the VA issued a general press release on April 3, 2009, in which the VA announced that, "because of improperly reprocessed endoscopy equipment," it was investigating possible cross-contamination of patients who underwent colonoscopies at the York VA Hospital (among other VA facilities) between April 2003 and December 2008. (*See* Am. Compl., Ex. B.) He alleges that the VA never informed him directly that it had potentially infected him with hepatitis during the April 2009 procedure, as it had done with other veterans.[3]

---

[2] Although not explicitly stated in the Amended Complaint, the court presumes that Stinnett is necessarily alleging that, at some point before Stinnett's procedure, the York VA Hospital staff utilized an endoscope on a patient who had contracted hepatitis, that this particular endoscope and associated equipment were not appropriately sanitized after that procedure, that the equipment was then used in performing Stinnett's colonoscopy, and that Stinnett contracted hepatitis because of transmission of the disease from that equipment.

[3] Based on submissions outside of the pleadings, it appears that the government sent form letters to thousands of veterans who had undergone colonoscopy procedures at the York VA Hospital from April 23, 2003 through December 1, 2008, corresponding to the time frame in which the government believed, after an internal investigation, that the potentially unsanitized equipment had been used. Thus, it appears that Stinnett did not receive a form letter from the

2

Stinnett's Sur-Reply adds that he did not learn about the potential link between his hepatitis and the colonoscopy until he "saw a news report on television" at an unspecified time. (Docket No. 22 at p. 2.)

In conclusory terms, Stinnett also states that "the VA Hospital remained silent about the possibility of infection through his colonoscopy, and that such silence constitutes a breach of the duty a medical provider owes to its patient" (*id.* ¶ 17), that "the VA Hospital knew of the possibility that the plaintiff could have been infected with hepatitis C as a result of the colonoscopy procedure, and did not inform the plaintiff" (*id.* ¶ 18), and that "[t]he actions of the VA in this case demonstrate an improper response to hazards through its lack of protection for its patients generally, and the Plaintiff in particular, from deadly infectious diseases" (*id.* ¶ 21).

Stinnett states that the VA's actions reflect "gross negligence, negligence per se, and general negligence in providing medical care" (*id.* ¶ 10), and that "[t]he actions of the VA represent a breach of the duty to warn of potential danger . . . ." (*Id.* ¶ 22). He brings his claims pursuant to the Federal Tort Claims Act ("FTCA"), §§ 1346(b) and 2671-80 (2012).

The defendants assert that Stinnett's claims should be dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative, for a lack of subject matter jurisdiction pursuant to Fed. R. Civ. 12(b)(1).

## **STANDARD OF REVIEW**[4]

---

VA because his colonoscopy took place on April *14*, 2003 – nine days before the government's internal cutoff date for notifying potentially affected veterans.

[4]As discussed herein, Stinnett does not contend that he is pursuing an independent "duty to warn" claim with respect to the April 2009 letter, which is the only claim potentially subject to dismissal for lack of subject matter pursuant to Rule 12(b)(1). Therefore, the court will only address and apply the Rule 12(b)(6) standard to Stinnett's Amended Complaint and, unless otherwise noted, the court does not rely on the additional materials filed by the government with

3

## I. General Motion to Dismiss Standard

In deciding a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957) (quoting Fed. R. Civ. P. 8(a)(2)). The court must determine whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). To establish the "facial plausibility" as required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[threadbare] recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949-50, 173 L. Ed. 2d 868 (2009).

## II. Standard as to the Statute of Limitations and Fraudulent Concealment Doctrine

The government argues that Stinnett's claims, which were filed at least seven years after

---

respect to its Rule 12(b)(1) argument. (*See* Docket No. 9, Attachments 1-4.)

4

the underlying incident, are barred by the Tennessee three-year statute of repose applicable to medical malpractice claims. Tenn. Code. Ann. §29-26-116(a). In response to the government's argument, Stinnett filed an Amended Complaint that added allegations purporting to justify equitable tolling of the statute of repose based on fraudulent concealment. (*See* Am. Compl. ¶¶ 15-22.) As discussed further herein, Tennessee does recognize a narrow exception to the statute of repose, where a defendant fraudulently concealed material facts from the plaintiff before the statute of repose had otherwise expired. Accordingly, the court must determine the pleading standard applicable to allegations relating to the fraudulent concealment exception.

Under Fed. R. Civ. P. 9(f), "[a]n allegation of time or place is material when testing the sufficiency of a pleading." *Hoover v. Langston Equip. Assocs., Inc.*, 958 F.2d 742, 744 (6th Cir. 1992). Thus:

> Under the normal rules of pleading, the statute of limitations is an affirmative defense and must be raised in the answer. Since Rule 9(f) makes allegations of time material, however, the defense of the statute [of limitations] may be raised on a motion to dismiss under Rule 12(b)(6) when it is apparent from the face of the complaint that the time limit for bringing the claim has passed. Thus, although Rule 9(f) apparently was designed simply to require a higher level of information in the pleadings, the federal courts have employed the rule as a screening device for time-barred claims and this seems consistent with general policies set forth in Rule 1 of achieving a just, speedy, and inexpensive adjudication of complaints.

*Id.* at 745 (quoting 5 Wright & Miller, *Fed. Prac. & Proc.*, § 1308, p. 695 (West 1990)). Therefore, "in cases where the complaint discloses a failure to file within the time allowed, . . . the plaintiff may come forward with allegations explaining why the statute of limitations should be tolled." *Id.* Where "the face of the complaint affirmatively indicates that the time limit for bringing the claim has passed," the plaintiff cannot "escape the statute [of limitations] by saying nothing." *Id.* (upholding dismissal of claims governed by Ohio statute of limitations for failure

5

to sufficiently plead fraudulent concealment requirements).

Accordingly, "it is not enough for plaintiffs to argue that the complaint, because it is silent as to when they first acquired actual knowledge, must be read in the light most favorable to them and construed as not precluding the possibility that they will be able to prove facts establishing their entitlement to relief. The obligation to plead facts in avoidance of the statute of limitations defense is triggered by the fact that 'it is apparent from the face of the complaint that the time limit for bringing the claim[s] has passed.'" *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 520 (6th Cir. 2008) (quoting *Hoover*, 958 F.2d at 744) (brackets in original). Under those circumstances, the *Twombly* standard applies to the plaintiff's complaint as it relates to potential tolling of the statute of limitations. *Id.* Thus, where "defendants have highlighted the apparent untimeliness of the complaint, plaintiffs may not simply rely on the bare assertion that they were unaware of the facts underlying their cause of action." *Id.* (citing *LRL Properties v. Portage Metro. Hous. Auth.*, 55 F.3d 1097, 1107 (6th Cir. 1995)).

In its Sur-Sur-Reply, the government argues, without reference to the Federal Rules of Procedure or Sixth Circuit case law, that Stinnett failed to plead fraudulent concealment with the requisite particularity. (Docket No. 25 at p. 4.) The government appears to suggest that, instead of the Rule 8 standard, the court should apply the heightened pleading standard of Fed. R. Civ. P. 9(b), under which allegations of fraud must be pleaded with particularity. Having conducted its own analysis, the court has located two decisions in which, with respect to state law claims subject to potential tolling on the basis of fraudulent concealment, the Sixth Circuit has analyzed the sufficiency of the complaint under the traditional Rule 8 standard, without reference to Rule 9(b). *See Duncan v. Leeds*, 742 F.2d 989 (6th Cir. 1984) (applying Tennessee law and analyzing

6

sufficiency of complaint allegations concerning fraudulent concealment under then-prevailing motion to dismiss standard); *Thornton v. Miles*, 65 Fed. App'x 997, 998 (6th Cir. 2003) (unpublished) (applying Kentucky law and finding that, "although the plaintiffs' *pro se* complaint contains conclusory allegations that some defendants acted fraudulently, no basis for tolling the limitations period for fraudulent concealment exists in this case.") The court has not located any Sixth Circuit authority to the contrary. Accordingly, the court finds no basis to apply the Rule 9(b) standard to Stinnett's allegations as they relate to the fraudulent concealment exception.[5]

## ANALYSIS

I. **Overview**

The FTCA provides a waiver of sovereign immunity for a plaintiff to bring state-law tort claims against the United States "in the same manner and to the same extent as a private individual under like circumstances," to the extent that those tort claims arise from the acts of

---

[5]By contrast, the Sixth Circuit has found that, with respect to *federal* claims for which plaintiffs seek equitable tolling of the statute of limitations based on a theory of fraudulent concealment, "plaintiffs must plead with particularity all the facts surrounding the fraudulent concealment of their claim." *See, e.g.*, *Gumbus, Jr. v. United Food & Commercial Workers Int'l Union*, Nos. 93-5113, 93-5235, 47 F.3d 1168, 1995 WL 5935, at *3 (6th Cir. Jan. 6, 1995) (unpublished) (upholding of claims under Labor Management Relations Act on basis that, *inter alia*, plaintiff failed to plead fraudulent concealment allegations with requisite particularity under Rule 9(b)); *Hoover*, 958 F.2d at 744-45 (upholding dismissal of Securities Exchange Act violations as time-barred based on, *inter alia*, failure to plead fraudulent concealment allegations with requisite particularity under Rule 9(b)); *Friedman v. Estate of Presser*, 929 F.2d 1151, 1159 (6th Cir. 1991) (upholding dismissal of *Bivens* action, where plaintiff had failed to plead element of fraudulent concealment exception with requisite particularity under Rule 9(b)) . Although this court has not identified a principled distinction as to why Rule 9(b) would apply only to fraudulent concealment allegations that support tolling of the statute of limitations with respect to federal claims– but not with respect to state law claims – the court need not address the merits of this apparent distinction, because Stinnett's fraudulent concealment allegations do not satisfy the lower Rule 8 standard, in any case.

7

federal employees acting within the scope of their employment. 28 U.S.C. § 2674 (2012); *see Young v. United States*, 71 F.3d 1238, 1241 (6th Cir. 1995). The liability of the United States under the FTCA is "determined in accordance with the law of the state where the event giving rise to liability occurred." *Young*, 71 F.3d at 1242. Here, the events giving rise to Stinnett's claims occurred at the York VA Hospital in Murfreesboro, Tennessee. Therefore, the substantive law of Tennessee applies to Stinnett's claims.

The government argues that Stinnett's FTCA claim must be dismissed because (1) he failed to file a certificate of good faith in accordance with the Tennessee Medical Malpractice Act ("TMMA"), Tenn. Code Ann. § 29-26-122(a) (2011),[6] which requires that the complaint in all medical malpractice claims include a representation from the plaintiff or plaintiff's counsel that a qualified medical expert has confirmed in writing that there is a good faith basis for the cause of action; and/or (2) his claim is barred by the Tennessee three-year statute of repose applicable to medical malpractice actions under Tenn. Code Ann. § 29-26-116 (2011). The government also argues that, to the extent the Amended Complaint can be construed as attempting to assert an independent claim for failure to warn with respect to the April 2009 notice, the court would lack subject matter jurisdiction to hear that claim under the FTCA discretionary function exemption.

In response, Stinnett argues that (1) his claims do not constitute medical malpractice claims subject to the TMMA good faith certificate requirement, and (2) he has sufficiently

---

[6]The TMMA and the associated statute of repose originally related only to "medical malpractice," but both statutes were amended in April 2012 to substitute the term "health care liability" for "medical malpractice" throughout. Tenn. Pub. Acts c. 798, §§ 8 and 14, eff. Apr. 23, 2012. Because Stinnett filed this suit in January 2012, his FTCA claim is governed by the pre-April 2012 version of the Act, which the court accordingly will continue to refer to as the "TMMA," and the associated pre-April 2012 statute of repose, both of which related only to "medical malpractice."

alleged fraudulent concealment, which justifies tolling of the statute of repose under Tennessee law.  In his Response and Sur-Reply, Stinnett does not address the government's argument concerning the FTCA discretionary function exemption.  Because Stinnett does not oppose the government's position on this particular issue – or even argue that the court should strain to construe his Amended Complaint as asserting an independent duty to warn claim – the court will dismiss that claim without further analysis.[7]

## II. The Nature of Stinnett's Claims

A threshold issue for the court is whether Stinnett's claims sound in ordinary negligence, medical malpractice, or both.  *See Brister v. HCA Health Servs.*, No. M2010-01996-COA-R3-CV, 2011 WL 2395218, at *3 (Tenn. Ct. App. June 8, 2011); *Mayo*, 785 F. Supp. 2d at 695. Accordingly, "[t]he court must ascertain the nature and the substance of the claims; the designation given by either the plaintiff or the defendant is not determinative."  *Brister*, 2011 WL 2395218, at *3 (citing *Estate of French v. Stratford House*, 333 S.W.3d 546, 555 (Tenn. 2011)).

The distinction between medical malpractice and other forms of negligence is subtle, and there are no rigid analytical lines separating the two causes of action.  *Estate of French*, 333

---

[7]Several other courts within this district have adjudicated cases brought by other veterans who similarly alleged that they may have contracted infectious diseases during endoscopic procedures at the York VA Hospital in the 2003-2008 time frame.  *See, e.g., Mayo v. United States*, 785 F. Supp. 2d 692 (M.D. Tenn. 2011); *Priest v. United States*, No. 3:11-cv-00557, 2011 WL 5023277, at *3 (M.D. Tenn. Oct. 20, 2011).  In *Mayo*, the plaintiff asserted, *inter alia*, an independent claim for negligent infliction of emotional distress, arguing that he received a February 2009 notification letter from the VA concerning the potential contamination issue that caused him emotional distress.  The court found that issuance of that letter fell within the FTCA discretionary function exemption, 28 U.S.C. § 2680(a), which deprives the court of subject matter jurisdiction over tort claims against the government premised on discretionary actions and decisions by the government grounded in considerations of public policy.  *See United States v. Gaubert*, 499 U.S. 315, 325 (1991); *Edwards v. United States*, 255 F.3d 318, 321-22 (6th Cir. 2001); *see also Priest*, 2011 WL 5023277, at *3.

9

S.W.3d at 555. "The distinguishing feature between ordinary negligence and medical malpractice is whether a plaintiff's claim is for injuries resulting from negligent medical treatment." *Id.* (internal quotation marks omitted). The Tennessee Supreme Court in *Estate of French* articulated the following standard for identifying medical malpractice claims:

> [W]hen a claim alleges negligent conduct which constitutes or bears a substantial relationship to the rendition of medical treatment by a medical professional, the medical malpractice statute is applicable. Conversely, when the conduct alleged is not substantially related to the rendition of medical treatment by a medical professional, the medical malpractice statute does not apply.

*Id.* (quoting *Gunter v. Lab. Corp. of Am.*, 121 S.W.3d 636, 641 (Tenn. 2003)). Accordingly, "the distinction between ordinary negligence and malpractice turns on whether the acts or omissions complained of involve a matter of medical science or art requiring specialized skills not ordinarily possessed by lay persons or whether the conduct complained of can instead be assessed on the basis of common everyday experience of the trier of fact." *Id.* at 556 (quoting *Peete v. Shelby Cnty. Health Care Corp.*, 938 S.W.2d 693, 696 (Tenn. Ct. App. 1996)).

Here, although Stinnett attempts to characterize his claims as traditional negligence claims, those claims are all governed by TMMA. Stinnett's claims concern the colonoscopy performed on him by York VA Hospital medical personnel, during which he claims that the "VA Hospital" – which necessarily was acting through its medical personnel with respect to the procedure – had utilized unsanitized endoscopy equipment, thereby causing him to contract hepatitis through cross-contamination of waste and bodily fluids from a previous infected patient on whom the medical staff had utilized that equipment. These allegations plainly involve negligent conduct that "bears a substantial relationship to the rendition of medical treatment by a medical professional." *See Estate of French*, 333 S.W.3d at 557.

10

Indeed, Stinnett's Amended Complaint alleges that the VA's actions reflect "gross negligence, negligence per se, and general negligence *in providing medical care*." (Am. Compl. ¶ 10 (emphasis added).) Furthermore, to prove his case, Stinnett would need to show, *inter alia*, that (1) VA medical professionals failed to utilize appropriately sanitized endoscopic equipment during his particular procedure on April 14, 2003; (2) that the equipment carried the hepatitis virus from a previous patient infected with hepatitis; and (3) that, as a result of the failure to sanitize this infected equipment before his procedure, Stinnett was infected with hepatitis during the colonoscopy performed by the York VA Hospital medical staff. These considerations cannot be assessed by the trier of fact "on the basis of common everyday experience," but instead require expert testimony on matters of medical science. *See Estate of French*, 333 S.W.3d at 556. For these reasons, the court finds that Stinnett's claims constitute medical malpractice claims that are governed by the TMMA.[8]

## II. Statute of Repose for Tennessee Medical Malpractice Actions and the Fraudulent Concealment Exception Thereto[9]

---

[8]This court's holding is consistent with this court's rulings in the substantially similar lawsuits filed by other veterans. *See, e.g.*, *Mayo*, 785 F. Supp. 2d at 694; *Priest*, 2011 WL 5023277, at *1). In these cases, each plaintiff attempted to plead his claim as sounding in something other than medical malpractice, apparently in an effort to avoid the TMMA requirements through artful pleading. Each court determined that, despite the plaintiff's characterization, the allegations set forth a medical malpractice claim governed by the TMMA *See, e.g.*, *Mayo*, 785 F. Supp. 2d at 696-98 (finding that plaintiff's purported claims for negligence, *res ipsa loquitur*, and lack of informed consent all "fall within the TMMA").

[9]Because the court finds that, for the reasons expressed herein, the Tennessee statute of repose extinguished Stinnett's claims, the court need not address whether Stinnett's cause of action must be dismissed with prejudice for failure to file a certificate of merit in accordance with the TMMA. Were the court to address that argument, it would present a difficult threshold question: whether the Tennessee good faith certificate pleading requirement is enforceable in federal court. The Sixth Circuit has not addressed this issue and district courts within this circuit, as well other federal courts, have split on whether state law medical malpractice certificate pleading requirements constitute (a) "substantive" state law that federal courts must

### A. Tennessee Substantive Law

Under Tenn. Code Ann. § 29-26-116 (2011):

(a)(1) The statute of limitations in health care liability actions shall be one (1) year . . . .

(2) In the event the alleged injury is not discovered within such one (1) year period, the period of limitation shall be one (1) year from the date of such discovery.

(3) In no event shall such action be brought more than three (3) years after the date on which the negligent act or omission occurred except where there is fraudulent concealment on the part of the defendant, in which case the action shall be commenced within one (1) year after discovery that the cause of action exists.

Part (3) is regarded as a three-year statute of repose, reflecting "a legislative intent to place an absolute three-year bar beyond which no medical malpractice right of action may survive." *Mills v. Wong*, 155 S.W.3d 916, 920 (6th Cir. 2005). Thus, upon expiration of the three-year repose period, a plaintiff's medical malpractice cause of action is extinguished. *Huddleston v. United States*, No. 11-5873, 2012 WL 1816261, at *2 (6th Cir. May 21, 2012) (unpublished)); *Duncan*,

---

enforce, or (b) procedural requirements that are trumped by the Federal Rules of Civil Procedure, particularly Rule 8. *Compare, e.g.*, *Williams v. United States*, 754 F. Supp. 2d 942. 948-953 (W.D. Tenn. 2010) (finding that earlier version of TMMA certification requirement was substantive and, therefore, enforceable in an FTCA action, but explicitly declining to address whether requirement violated any federal procedural rules because plaintiff had not raised that argument); *with Long v. Adams*, 411 F. Supp. 2d 701, 705-709 (E.D. Mich. 2006) (refusing to enforce Michigan pleading certification requirement in diversity action, on basis that requirement was procedural and conflicted with Rule 8(a)); *see also Braddock v. Orlando Reg'l Health Care Sys., Inc.*, 881 F. Supp. 580, 584 (M.D. Fla. 1995) (refusing to enforce Florida certificate of merit pleading requirement that "directly conflicts with Fed. R. Civ. P. 8(a)"); *Trierwieler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1539-40 (10th Cir. 1996) (enforcing Colorado certificate of merit requirement as substantive); Ben Grossberg, *Uniformity, Federalism, and Tort Reform: the* Erie *Implications of Medical Malpractice*, 159 Pa. L. Rev. 217 (2010); Meryl J. Thomas, *The Merits of Procedure vs. Substance*: Erie*, Iqbal, and Affidavits of Merit as MedMal Reform*, 52 Ariz. L. Rev. 1135 (2010).

12

742 F.2d at 991. Tennessee courts and the Sixth Circuit have acknowledged that the statute of repose can have harsh results for a plaintiff injured by medical malpractice, because the plaintiff's claim could be extinguished by operation of law before the plaintiff even discovers the injury. *See Burris v. Ikard*, 798 S.W.2d 246, 250 (Tenn. 1990) (denying federal and state constitutional challenges to § 29-26-116, finding that the statute of repose barred the plaintiff's cause of action before he even discovered the underlying injury, and reaffirming that, "[d]espite the harshness of this result, this court cannot simply abrogate the legislature's enactment") (quoting *Cantrell v. Buchanan*, 1989 WL 25598, at *1 (Tenn. App. Mar. 22, 1989)); *Duncan*, 742 F.2d at 991 ("The result of the absolute three-year limit is that 'it is possible for an individual's right to sue to expire before its existence is known.'") (quoting *Jones v. Morristown-Hamblen Hosp. Ass'n, Inc.* 595 S.W. 2d 816, 821 (Tenn. Ct. App. 1979)).

The Sixth Circuit has found that the Tennessee medical malpractice statute of repose is substantive and applies to medical malpractice suits brought under the FTCA. *Huddleston*, 2012 WL 1816261, at *2. As with Stinnett's claims here, *Huddleston* involved a claim by a veteran who, as a result of the VA's failure to utilize appropriate medical procedures, allegedly contracted hepatitis during an October 2006 colonoscopy at the York VA Hospital. Because the plaintiff had filed the action more than three years after that procedure, the Sixth Circuit found that the district court appropriately dismissed the claim pursuant to the Tennessee statute of repose. *Id.*

Unlike in *Huddleston*, however, here Stinnett has pleaded fraudulent concealment as an exception to the statute of repose. "[T]he absolute temporal bar imposed by the medical malpractice statute of repose may be tolled only in exceedingly limited circumstances," including

13

a "clearly stated exception . . . for fraudulent concealment." *Mills*, 155 S.W.3d at 920; *Green v. Sacks*, 56 S.W.3d 513 (Tenn. 2001); Tenn. Code. Ann. 29-26-116(a)(3).

Under Tennessee law, the fraudulent concealment exception to the three-year statute of repose contains the following elements: (1) the health care provider took affirmative action to conceal the wrongdoing or remained silent and failed to disclose material facts despite a duty to do so; (2) the plaintiff could not have discovered the wrong despite exercise of reasonable care and diligence; (3) the health care provider knew of the facts giving rise to the cause of action, and (4) there was a concealment, which may consist of the defendant withholding material information, making use of some device to mislead the plaintiff, or simply remaining silent and failing to disclose material facts when there was a duty to speak. *Shadrick v. Coker*, 963 S.W.2d 726, 736 (Tenn. 1998); *Bailey v. Tasker*, 146 S.W.3d 580, 586 (Tenn. Ct. App. 2004).

### B. Application

Here, as the defendants have argued, the face of the Amended Complaint plainly establishes that, absent tolling, Stinnett has filed his claims well outside of the three-year statute of repose: Stinnett alleges that he was injured on April 14, 2003, but he did not file this action until January 27, 2012.[10] Thus, based on the Amended Complaint allegations, his cause of action expired by operation of Tennessee law on April 14, 2006, unless the defendant fraudulently concealed from him the facts establishing his potential cause of action. Under these

---

[10]The court assumes, without deciding, that this "action" was commenced when it was filed in January 2012. However, the Sixth Circuit has explicitly declined to decide whether, for purposes of the Tennessee statute of repose, an FTCA action is commenced when a plaintiff files an administrative claim with the United States or when, pursuant to applicable FTCA procedures, the plaintiff subsequently files an action on the same subject matter in federal court. *See Huddleston*, 2012 WL 1816261, at *2.

14

circumstances, the court must examine the Amended Complaint allegations to determine whether Stinnett has pleaded sufficient facts concerning fraudulent concealment to avoid the statute of repose defense. *See Bishop*, 520 F.3d at 520.[11]

Stinnett has pleaded his theory of fraudulent concealment only in conclusory terms. He has not alleged even the most basic facts necessary to establish a plausible entitlement to tolling of the Tennessee statute of repose based on fraudulent concealment. Stinnett essentially just recites the elements of a fraudulent concealment claim (*see* Am. Compl. ¶¶ 15-22), without alleging an essential element of the fraudulent concealment exception: the government's knowledge of the facts giving rise to the cause of action within three years of the underlying incident. In particular, Stinnett does not even allege (1) that the VA had knowledge of the cross-contamination issue at any point prior to April 2009, when the VA issued the press release attached as Exhibit B to the Amended Complaint; and (2) more specifically, that the VA learned of the cross-contamination issue before April 14, 2006, when Stinnett's medical malpractice claims *expired as a matter of law* absent fraudulent concealment by the government to that point.[12] Thus, the Amended Complaint does not allege that, during the relevant time frame, the government was aware of facts it might have concealed that would have given rise to Stinnett's

---

[11]There is also a second recognized exception to the statute of repose, which provides that, where " a foreign object has been negligently left in a patient's body," the three-year statute of repose does not apply. Tenn. Code. Ann. § 29-26-116(a)(4) (2011). That exception is not at issue here.

[12]Stinnett's briefing in support of the Amended Complaint offers no further relevant details concerning these allegations, except to state that the government "had complete knowledge of the facts, and the plaintiff did not," and that the plaintiff "much later learned of the link while watching the evening news on television" at an unspecified time. (Docket No. 11 at pp. 3-4.)

15

cause of action. *See Burris*, 798 S.W.2d at 249 (where defendant doctor "did not know nor could he have known of any facts he might conceal that would give rise a cause of action on behalf of plaintiff or his decedent," the facts "do not rise to the level of fraudulent concealment and therefore the statute of limitations was not tolled by [Tenn. Code Ann. § 29-26-116(a)(3)].")

Given the lack of these basic details concerning the government's prior knowledge, Stinnett appears to be claiming that, when the government learned about the contamination issue in the 2009 time frame, it should have notified Stinnett personally along with the other veterans who received direct notification mailings from the VA. Thus, in failing to warn Stinnett at that time, the government thereby fraudulently concealed Stinnett's potential cause of action from him going forward. However, even if it were true that the government intentionally failed to contact Stinnett at the time – which would make little sense, given that the government alerted thousands of other similarly at-risk veterans personally and issued a public press release about the cross-contamination problem – Stinnett's claims had already expired in April 2006 as a matter of law. Thus, by the time the government learned of the problem and began notifying particular veterans (at least according to Stinnett's Amended Complaint), Stinnett had no cause of action to toll. That is, the doctrine of fraudulent concealment could not retroactively revive a medical malpractice claim that Stinnett no longer possessed.

At any rate, allegations of time are material when testing the sufficiency of Stinnett's pleading, *see* Fed. R. Civ. P. 9(f), and Stinnett was under an obligation to plead the essential details supporting his fraudulent concealment claim in more than conclusory terms. *See Bishop*, 520 F.3d at 520. Notwithstanding that obligation, he has failed to allege any facts establishing that the government knew of the facts giving rise to Stinnett's injuries before April 2006, which

16

is required to establish a basis for tolling the statute of repose based on the fraudulent concealment exception. Therefore, Stinnett's case must be dismissed.

On a final note, although the court is constrained to dismiss Stinnett's claims under applicable Tennessee substantive law, the court finds this result to be manifestly unjust. If the allegations in the Amended Complaint are true, Stinnett indeed contracted hepatitis as a result of the York VA Hospital clinicians' patent failure to utilize appropriately sterilized equipment, in violation of basic medical standards. Until learning of his injuries at least six years after his colonoscopy, Stinnett was unable, through no fault of his own, to determine that medical malpractice by the VA had potentially caused him to contract hepatitis. Nevertheless, the Tennessee statute of repose extinguished his claims before he could discover them, and Tennessee's "exceedingly limited" bases for tolling the statute of repose provide him no relief. Indeed, absent a showing of fraudulent concealment by the government before April 2006 – which carries with it an elevated degree of scienter – Stinnett is foreclosed from obtaining redress for his injuries. Thus, the government is essentially shielded from liability simply because it failed to ascertain earlier that its clinicians may have infected thousands of veterans with hepatitis over a nearly five-year period – even if the government's failure to identify the issue earlier was itself negligent. Because the exceptions to the Tennessee statute of repose are so narrow, when applying the statute in the context of federal pleading standards, a plaintiff such as Stinnett is essentially foreclosed from proceeding with his claim, absent some factual basis supporting fraudulent concealment allegations – information that a plaintiff such as Stinnett likely does not possess or have reasonable access to without discovery.

Be that as it may, Stinnett's Amended Complaint allegations are insufficient to avoid the

Tennessee statute of repose. Because Stinnett has simply failed to state sufficient allegations with respect to fraudulent concealment, his claims will be dismissed without prejudice.

## CONCLUSION

For the reasons set forth herein, the government's Motion to Dismiss will be granted and the plaintiffs' Amended Complaint will be dismissed without prejudice..

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge